*Robert E. Barnes*
*Barnes Law, LLP*
*601 South Figueroa Street,*
*Ste. 4050*
*Los Angeles, CA 90017*
*(213) 220-3341*
*Robertbarnes@barneslawllp.com*
*Attorneys for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**
**EASTERN DIVISION**

| | |
|---|---|
| CAUNCENET BROWN, and THE ESTATE OF NAGHIBE SWAN SERRANO<br>        Plaintiff,<br><br>    vs.<br><br>RANDY GILLIAM, DR. NADER PEIKAR, ANN SANTELIZ; BRIGITTE WOLVERTON; DEFENDANT AUGUSTINI; LIEUTENANT GUEVARA; JOHN DOE 1; JOHN DOES 2-5<br>        Defendants. | Case No: _____<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## INTRODUCTION

1. Plaintiffs Cauncenet Brown, and the Estate of Naghibe Swan Serrano, by their attorneys, Barnes Law LLP bring this action under the United States Constitution pursuant to *Bivens v. Six Unknown Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), as a result of Defendants' failure to provide medical care in violation of the Eighth Amendment;

## JURISDICTION

2. This Court has jurisdiction over the subject matter of this Complaint under the Fourth and Eighth Amendments to the United States Constitution and 28 U.S.C. §

1331.

## VENUE

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) and (e) and 28 U.S.C. §1402(b). This is a civil action in which Defendants are agencies of the United States or officers of such agency and Plaintiffs reside in this district. Further the Defendants' acts that are the subject of this Complaint occurred in this District.

## PARTIES

4. Plaintiff, Cauncenet Brown ("Brown"), is an adult citizen of the United States and a resident of the State of California. At all times material hereto, Brown was an inmate residing at the Federal Correctional Complex, Victorville (FCI), and entitled to all rights, privileges, and immunities accorded residents of the State of California, and citizens of the United States. At all times material hereto, Brown was pregnant with a healthy baby while being involuntarily detained at FCI under the direct custody, control, and supervision of the Defendants.

5. Plaintiff, the Estate of Naghibe Swan Serrano ("Naghibe") represents the decedent, Naghibe Swan Serrano whose serious-acute-obvious medical needs were deliberately ignored and neglected while she was in the custody and under the care/control of the Defendants at FCI, all of whom she relied upon to provided adequate medical care. As a result, Naghibe died nine days after her birth where she was forcefully separated from her mother. At all times material hereto, Naghibe was entitled to all rights, privileges, and immunities accorded by the Constitution of the United States.

6. Defendant, Randall Gilliam ("Gilliam"), is an adult citizen of the United States and a resident of the State of California. At all times material hereto, Gilliam was the Health Services Administrator at FCI and is sued in his individual capacity as a federal actor, acting under the color of federal law and was ultimately responsible

for the health, safety, security, welfare and humane treatment of all inmates at FCI including Brown and Naghibe from March through July of 2019. At all times material hereto, Gilliam was deliberately indifferent to the serious medical needs and Constitutional rights of Brown and Naghibe and ignored Brown's medical requests and direct medical orders regarding the Plaintiffs' care.

7. Defendant, Dr. Nadar Peikar ("Peikar"), is an adult citizen of the United States and a resident of the State of California. At all times material hereto, Peikar was employed at FCI as a medical care provider. At all times material to, Dr. Peikar was responsible for the health, safety, and humane treatment of patients in his care in FCI, including Brown and Naghibe, from March 2019 to July 2019. At all times material hereto, Dr. Peikar failed to provide proper medical treatment to Brown and Naghibe despite being aware of their serious medical needs and multiple requests for medical attention. At all times material hereto, Dr. Peikar was deliberately indifferent to the serious medical needs and Constitutional rights of Brown and Naghibe. Defendant Peikar is sued in his individual capacity as a federal actor acting under color of federal law.

8. Defendant Ann Santeliz, MA ("Santeliz"), is an adult citizen of the United States and a resident of the State of California. At all times material hereto, Santeliz was employed at FCI as a medical care provider and Medical Assistant. At all times material hereto, Santeliz was responsible for the health, safety, and humane treatment of patients under her care in FCI, including Brown and Naghibe, from March 2019 to July 2019. At all times material hereto, Santeliz failed to provide proper medical treatment to Brown and Naghibe despite being aware of their serious medical needs and multiple requests for medical attention. Multiple times during her incarceration, Brown informed Santeliz that she was not receiving proper medical care or being seen by an OBG/YN. Despite these direct requests for medical care, Santeliz failed to

take any action to assure Brown received medical treatment. At all times material hereto, Santeliz was deliberately indifferent to the serious medical needs and Constitutional rights of Brown and Naghibe. Defendant Santeliz is sued in her individual capacity as a federal actor acting under color of federal law.

9. Defendant Brigitte Wolverton, PA-C ("Wolverton"), is an adult citizen of the United States and a resident of the State of California. At all times material hereto, Wolverton was employed at FCI as a medical care provider and Physician's Assistant. At all times material to, Wolverton was responsible for the health, safety, and humane treatment of patients under her care in FCI, including Brown and Naghibe, from March 2019 to July 2019. At all times material hereto, Wolverton failed to provide proper medical treatment to Brown and Naghibe despite being aware of their serious medical needs and multiple requests for medical attention. In early May of 2019, Brown informed Wolverton that she was not receiving proper medical care or being seen by an OBG/YN and that she had pain in her vagina and blood when she urinated. Despite this direct request for medical care, Wolverton failed to provide care and Brown's request went unattended. At all times material hereto, Wolverton was deliberately indifferent to the serious medical needs and Constitutional rights of Brown and Naghibe. Defendant Wolverton is sued in her individual capacity as a federal actor acting under color of federal law.

10. Defendant Augustini ("Augustini"), is an adult citizen of the United States and a resident of the State of California. At all times material hereto, Augustini was employed at FCI as a Unit Manager. At all times material to, Augustini was responsible for the health, safety, and humane treatment of patients in her care in FCI, including Brown and Naghibe, from March 2019 to July 2019. Brown made multiple medical requests directly to Augustini over the course of her pregnancy regarding the lack of medical care she was receiving. Despite placing Augustini on

notice of the Plaintiffs' serious medical needs these requests were not answered or properly escalated to medical staff. At all times material hereto, Augustini was deliberately indifferent to the serious medical needs and Constitutional rights of Brown and Naghibe. Augustini is sued in her individual capacity as a federal actor acting under color of federal law.

11. Defendant Lieutenant Guevara ("Guevara"), is an adult citizen of the United States and a resident of the State of California. At all times material hereto, Guevara was a Lieutenant at FCI and is sued in his individual capacity as a federal actor, acting under the color of federal law and was ultimately responsible for the health, safety, security, welfare and humane treatment of all inmates at FCI including Brown and Naghibe from March through July of 2019. Medical Staff at Desert Valley Hospital informed Guevara of Brown's serious medical condition and their recommendation that she be moved to a higher level of care facility on June 20, 2019. This medical advisement was ignored and Brown was taken back to FCI against documented medical advice. At all times material hereto, Guevara was deliberately indifferent to the serious medical needs and Constitutional rights of Brown and Naghibe and ignored Brown's medical requests and direct medical orders regarding the plaintiffs' care. At all times material hereto, Guevara was deliberately indifferent to the serious medical needs and Constitutional rights of Brown and Naghibe. Guevara is sued in his individual capacity as a federal actor acting under color of federal law.

12. Defendant John Doe 1 (the "Assistant Warden"), is an adult citizen of the United States and a resident of the State of California. At all times material hereto, John Doe 1 was employed at FCI as the Assistant Warden. The Assistant Warden is African-American, slim build, and likely in his late 30's. At all times material to, the Assistant Warden was responsible for the health, safety, and humane treatment of

patients in his care in FCI, including Brown and Naghibe, from March 2019 to July 2019. Brown sent multiple medical requests to the Assistant Warden over the course of her pregnancy and failed to receive a response or proper medical treatment despite placing the Assistant Warden on notice of their serious medical needs and multiple requests for medical attention. At all times material hereto, the Assistant Warden was deliberately indifferent to the serious medical needs and Constitutional rights of Brown and Naghibe. The Assistant Warden is sued in his individual capacity as a federal actor acting under color of federal law.

13.   Defendants John Does 2-5 are adult citizens of the United States and residents of the State of California. At all times material hereto, John Does 2-5 were employed at the FCI and/or the Department of Justice, and were responsible for providing health care services and protection to all inmates at FCI, including Brown and Naghibe from March through July of 2019. At all times material hereto, John Does 2-5 are sued in their individual capacities as federal actors acting under color of federal law, within the scope of their employment and authority, and pursuant to the policies, customs, and practices of FCI and the Department of Justice.

## FACTUAL ALLEGATIONS

14.   On or about March 13, 2019, Brown entered and was incarcerated at the Federal Correctional Institution, Victorville ("FCI").

15.   That on March 13, 2019, Brown entered FCI she was 43 years old and pregnant at approximately 7-9 weeks gestation.

16.   Brown underwent a health screen on March 13, 2019, where she was observed by FCI staff, and informed that same that she was pregnant, had an incompetent cervix, and would need a cerclage at 12 weeks. Brown told staff that she would need a cerclage placed as she was informed of this requirement by medical providers during previous pregnancies.

17. On March 14, 2019, Brown told FCI staff she wanted to enter the MINT program.

18. Brown was medically unassigned to a job detail due to the high-risk nature of her pregnancy.

19. On March 21, 2019, Brown was seen by Dr. Peikar and referred to an OB/GYN. Brown relayed to Dr. Peikar and FCI staff that she had previous complications of pregnancy due to the incompetent cervix. Brown also informed Dr. Peikar and FCI staff that she had experienced one premature birth, and one molar pregnancy. Brown informed Dr. Peikar and medical staff that her doctor informed her that any future pregnancies would require a cerclage to be placed at about 12 to 13 weeks.

20. On March 29, 2019, Brown experienced bleeding, spotting, nausea and headaches.

21. On April 4, 2019, Brown again informed staff that she had her previous daughter at 25 weeks premature. Dr. Villarosa recommended that Brown start Hydroxyprogesterone (a progestin indicated to reduce the risk of preterm birth in pregnant women who have a history of singleton spontaneous preterm birth) at 16 weeks until 37 weeks and referred her to Perinatology.

22. On April 5, 2019, an order was made to administer Hydroxyprogesterone to Brown weekly. However, on April 8, 2019, this order was discontinued by Dr. Peikar.

23. Brown was scheduled for a cervical cerclage procedure at Victor Valley Medical Center on April 12, 2019, with a post-operation follow-up two weeks after the surgery.

24. On April 10, 2019, Brown was ordered to be placed on 75% bed rest and should be in bed unless she was going to meals, pill line, medical, or the restroom.

25. On April 11, 2019, Brown was scheduled to be admitted to the hospital for pre-operation examination but the Defendants failed to transport Brown to the hospital. The hospital placed a phone call to FCI to inquire as to why Brown was not admitted, but no one at FCI responded.

26. Brown was not brought to Victor Valley Medical Center until 12:14:10 p.m. the day of her operation. Less than two hours before the procedure's scheduled start time of 2:00 p.m. The procedure was performed by Dr. Villarosa.

27. On April 12, 2019, Brown's cerclage was placed and she was ordered to start Hydroxyprogesterone at 16 weeks administered every day until 37 weeks or delivery. A two-week post-op follow-up was ordered.

28. On April 13, 2019, Brown was discharged back to FCI under the custody and control of the Defendants.

29. After Brown returned to FCI on April 3, 2009, she did not receive a post-op follow-up by an OB/GYN at any point during her incarceration.

30. Brown was not taken to see an OBG/YN until June 20, 2019.

31. From April 11, 2019, until June 20, 2019, Brown was not seen by an OB/GYN despite her making multiple documented requests to see an OB/GYN.

32. On May 3, 2019, Brown submitted a sick call slip stating she had pain in her vagina and discovered blood. Brown was provided no medical care on May 3, 2019.

33. On May 6, 2019, Brown, who was in her 14th week of pregnancy, submitted an email to the Assistant Warden explaining that she was not receiving proper and necessary care for her high-risk pregnancy. Brown further informed the Assistant Warden that she did not receive any follow-up care after her cervix was stitched up, and she had not been seen in the 3 weeks post her outpatient surgery. Brown also reported she had not received her prescribed Hydroxyprogesterone or her

weekly injections, despite medical orders. Brown again complained of pain in her vagina and blood.

34. In response to her May 6 request, Brown was seen by Dr. Peikar who referred her once again to an OBG/YN for care of **normal pregnancy** despite Dr. Peikar noting that Brown had previously delivered prematurely at 25 weeks. The scheduled OBG/YN dates were listed as May 31, 2019, and June 17, 2019.

35. On May 8, 2019, Brown again emailed staff indicating that Dr. Peikar's medical request for her to receive a wheelchair was not made.

36. On May 20, 2019, after receiving no further treatment or response, Brown sent another email informing Defendants that she still had not received her Hydroxyprogesterone, was 5 weeks removed from her surgery and still had not received any follow-up care with an OBG/YB.

37. As of May 20, 2019, Brown still had not received her Hydroxyprogesterone, and still had not received her prescribed wheelchair.

38. To no avail, Brown received no follow-up care on her stitched cervix. Brown sent another email stating that she had not been seen for seven weeks post her surgery. Brown again expressed her concern about her baby and her health and repeatedly informed the Defendants of the same.

39. Brown authored yet another email to the Defendants on May 27, 2019, requesting regular medical visits and informing medical staff and Defendants that her scheduled appointments were not being kept. Brown informed Defendants that Dr. Peiker had been unable to assist her and she still had not been seen for post-op in 7 weeks. Brown requested a transfer to another detention facility where treatment would be provided.

40. On June 5, 2019, Brown, for the first time, received her Hydroxyprogesterone injection and around this time finally received her prescribed

wheelchair.

41. On June 10, 2019, Brown filed a complaint requesting an administrative remedy. Brown's complaint explained that the last time Brown was seen by an OBG/YN was April 4, 2019, nine weeks prior, despite medical orders. Brown again reported the repeated failures to provide her with medical care and once again asked to be transferred to a medical facility that could treat her severe health problems.

42. Brown was not receiving monthly check-ups by an OBG/YN. When questioned, Gilliam stated to Brown that such check-ups were unnecessary until the last couple months of pregnancy.

43. Gilliam, in addition to the other Defendants, was aware of Brown's high-risk pregnancy and the fact that she had a history of premature birth including her last child, who was born at 25 weeks.

44. On June 20, 2019, Brown was taken off-site to a medical facility, Desert Valley Hospital ("DVH") because of excessive vaginal bleeding.

45. Staff at DVH made the following notes regarding Brown's condition: "Anterior placenta cervical incompetence bulging membranes translabial scan. Fluid on vaginal vault."

46. DVH staff discussed the severity of Brown's condition with Lieutenant Guevara and thoroughly discussed these risks. Guevara then asked DVH staff to discuss these risks with Randy Gilliam.

47. DVH staff discussed the severity of Brown's condition with Defendant Gilliam and **advised that Brown be taken to a higher level of care facility as DVH was not equipped to deal with a premature birth**. Gilliam blatantly disregarded this medical determination and stated that Brown would be transported back to FCI.

48. Brown was returned to FCI the same day she left on June 20, 2019.

49. The very next morning on June 21, 2019, Brown began leaking fluid and

an emergency was document by staff.

50. Brown was transferred to St. Mary's Medical Center due to this predictable medical emergency.

51. Staff at St. Mary's noted that Brown was grossly leaking fluid and that she had a Cerclage placed in April **but had not seen her doctor for a follow-up.**

52. Staff at St. Mary's removed the Cerclage and noted that Brown was "grossly ruptured; admit to atepartum."

53. Due to the severity of her condition and imminent delivery, Brown was transferred to Loma Linda Hospital.

**54.** Staff at Loma Linda noted that Brown **only had one visit with Dr. Villarosa and was not seen by that doctor after her surgery of by an OBG/YN.**

55. On June 22, 2019, Brown delivered Naghibe at Loma Linda at 22 weeks of pregnancy.

56. Brown developed sepsis during the labor and within 3 to 4 days, she was separated from Naghibe and transferred back into FCI.

57. On July 1, 2019, due to the Defendants' unconstitutional treatment and deliberate indifference, Naghibe died. The defendants' failure to provide medical care during Brown's pregnancy caused significant damages suffered by Brown and Naghibe, including Naghibe's death.

58. On July 10, 2019, Brown met with staff regarding her post-partem depression. Multiple staff members joked about Brown's demeanor after she had just lost Naghibe.

## COUNT I

(Eighth Amendment of the United States Constitution/Deliberate Indifference Under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics* Against All Named Defendants)

59. Plaintiffs reallege all prior paragraphs of this complaint and incorporate

the same herein by this reference as if those paragraphs were set forth in full.

60. That each and every Defendant, during Brown's incarceration, was aware that Brown was pregnant, with a high-risk pregnancy, which constituted a serious medical condition.

61. That each and every Defendant during Brown's incarceration had either personal contact or a personal correspondence with Brown and had a duty to provide her and Naghibe with medical care.

62. That each and every Defendant during Brown's incarceration failed to provide constitutionally adequate medical care to Brown and Naghibe.

63. That Brown placed each defendant on notice that she was not receiving medical care multiple times over the course of her incarceration.

64. As a result of the Defendants' blatant refusal to provide Brown and Naghibe with medical attention and the denial of Brown's multiple requests for proper medical attention, Brown suffered serious complications with her pregnancy.

65. At all relevant times, the potential complications from Brown's high-risk pregnancy were obvious and known or should have been known to each of the Defendants.

66. That the conduct of each Defendant was committed pursuant to and in execution and implementation of, the color of state and federal law and each of the named Defendants exhibited a deliberate indifference in violation of the Eighth Amendment to the United States Constitution to Brown and Naghibe's serious medical needs causing the constitutional deprivation of Brown and Naghibe's individual rights to-wit including but not limited to the following: A) Deliberately ignoring Brown and Naghibe's serious and immediate needs for medical treatment; B) Deliberately failing to transport Brown and Naghibe to an appropriate hospital for immediate medical care and treatment; C) Deliberately failing to follow-up Brown's

express requests for medical treatment and her prescribed medications; D) Deliberately, willfully, and wantonly withholding required medical care to Brown and Naghibe when they had actual knowledge of her serious medical conditions requiring immediate attention and monitoring; and E) Deliberately, ignoring medical orders and transferring Brown from DVH back to FCI.

67. That as a direct and proximate result of the deliberate, willful, wanton, and reckless violation of Brown and Naghibe's constitutional rights, Plaintiffs suffered injuries and damages including, but not limited to the following:

    A) emotional distress, psychological distress, and mental anguish;
    B) physical pain and suffering;
    C) loss of companionship;
    D) loss of future enjoyment of life;
    E) fright and shock;
    F) denial of social pleasure and enjoyment;
    G) embarrassment, humiliation, and mortification;
    H) reasonable expenses of necessary medical care, treatment and services;
    I) violations of constitutional rights;
    J) death;
    K) punitive damages for Defendants' willful conduct; and,
    L) any and all other damages, including, but no limited to attorney fees recoverable.

## CONDITIONS PRECEDENT

68. Plaintiffs reallege all prior paragraphs of this complaint and incorporate the same herein by this reference as if those paragraphs were set forth in full.

69. All conditions precedent to this lawsuit have been performed or otherwise occurred.

## PRAYER FOR RELIEF

70. WHEREFORE, the Plaintiffs respectfully demand judgment in favor of Plaintiffs against each of the Defendants, jointly and severally, awarding Plaintiffs:

   a. Compensatory damages in an amount to be determined by the Jury;
   b. Punitive damages in an amount to be determined by the Jury;
   c. Reasonable costs and expenses associated with in this action including attorneys' fees; and,
   d. Any other further relief as this Honorable Court deems just and fair.

71. The Department of Justice is liable pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) for payment of any judgment entered against the Defendants in this action because the Defendants were acting within the scope of their employment when they committed the above-mentioned and unconstitutional acts.

72. Plaintiffs hereby reserve their right to amend their Complaint as additional information becomes known through discovery.

///
///
///

# DEMAND FOR JURY TRIAL

73. The Plaintiffs demand trial by jury.

Dated: March 15, 2021.                              Respectfully Submitted,

Robert E. Barnes

s/Robert E. Barnes
Barnes Law, LLP
601 South Figueroa Street, Ste. 4050
Los Angeles, CA 90017
(213) 220-3341
Robertbarnes@barneslawllp.com
Attorneys for Plaintiffs

15
COMPLAINT